IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CATHY L. WELLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 09-404-NLH/MPT |
| | ) |
| MERIT LIFE INSURANCE COMPANY | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM OPINION</u>**

James J. Woods, Jr., Esquire, James J. Woods, Jr., P.A., Greenville, Delaware.
Counsel for Plaintiff.

Joseph James Bellew, Esquire, Cozen O'Connor, Wilmington, Delaware; Alycen A. Moss, Esquire, Cozen O'Connor, Atlanta, Georgia.
Counsel for Defendant.

Dated: December 4, 2009
Wilmington, Delaware

THYNGE, Magistrate Judge

## INTRODUCTION

Cathy L. Wells ("plaintiff")[1] commenced this action on March 22, 2009 against Merit Life Insurance, Inc. ("defendant").[2] Plaintiff alleges bad faith and breach of the implied covenant of good faith and fair dealing. Presently before the court is defendant's motion to compel arbitration.[3] For the reasons set forth below, the court will grant defendant's motion to compel arbitration and dismiss plaintiff's claim without prejudice.

## BACKGROUND

On June 1, 2007, plaintiff and her husband, Jerome H. Wells, executed a home equity line of credit agreement ("credit agreement") with American General Financial Services, Inc. ("American General"). The credit agreement includes an "Arbitration Agreement and Waiver of Jury Trial" provision that details the matters covered and not covered by arbitration ("arbitration agreement"). Each page of the credit agreement was initialed by both borrowers, plaintiff and her husband, and the parties' signatures were affixed to the final page. In accordance with the credit agreement, Mr. Wells obtained a group credit life insurance from defendant.

Plaintiff's husband passed away a year later on July 27, 2008. Subsequent to

---

[1] Plaintiff is an individual residing in Sussex County, Delaware.

[2] Defendant is an affiliate of American General Financial Services, Inc. doing business in the State of Delaware.

[3] Ultimately, defendant is requesting that plaintiff's complaint be dismissed on the grounds that the court lacks subject matter jurisdiction because the dispute is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16. See *NAMA Holdings, LLC v. Related World Market Center*, LLC, 922 A.2d 417, 429 (Del. Ch. 2007) ("Delaware courts lack subject matter jurisdiction to resolve disputes that litigants have contractually agreed to arbitrate.").

her husband's death, plaintiff submitted a claim to defendant for policy benefits. Defendant denied her claim and plaintiff filed this present suit in the Superior Court of Delaware on March 22, 2009. Upon defendant's motion, the matter was removed to the District Court for the District of Delaware. Before the court is defendant's motion to compel arbitration, filed on June 4, 2009.[4]

**STANDARD OF REVIEW**

When jurisdiction is challenged, the party asserting subject matter jurisdiction has the burden of proving its existence.[5] Under Rule 12(b)(1), the court's jurisdiction may be challenged either facially, that is, based on the legal sufficiency of the claim, or factually, based on the sufficiency of jurisdictional facts.[6] A motion to dismiss on the basis that the dispute must be arbitrated is a factual challenge.[7]

When there is a factual attack, the court is not "confine[d] to the allegations in the . . . complaint, but [may] consider affidavits, depositions and testimony to resolve factual issues bearing on jurisdiction."[8] Under that circumstance, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims."[9]

**DISCUSSION**

---

[4] The parties' consented to the jurisdiction of Magistrate Judge Thynge on August 24, 2009 pursuant to 26 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

[5] *See Carpet Group Int'l. v. Oriental Rug Importers Ass'n., Inc.*, 227 F.3d 62, 69 (3d Cir. 2000).

[6] 2 *Moore's Federal Practice* § 12.30[4] (3d ed. 1997).

[7] *Gonzalez v. Citigroup*, No. 09-017-SLR, 2009 WL 2340678, at *1 n.1 (D. Del. 2009).

[8] *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997); *see also Mortenson v. First Fed. Sav. & Loan Ass'n.*, 549 F.2d 884, 891-92 (3d Cir. 1977).

[9] *Carpet Group*, 227 F.3d at 69 (quoting *Mortenson*, 549 F.3d at 891).

Arbitration disputes are governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"). Prior to compelling arbitration, the FAA requires that the court first determine whether the parties have agreed to arbitrate.[10] That determination is made by applying "ordinary state-law principles that govern the formation of contracts."[11] Second, the dispute at issue must come within the scope of the arbitration agreement.[12] Pursuant to the FAA and federal policy, there is a presumption in favor of arbitration "in determining whether the particular dispute falls within a valid arbitration agreement's scope."[13]

Defendant argues that plaintiff's dispute is governed by the FAA because the parties entered into a valid credit agreement which specifically provides that "[t]he [FAA] applies to and governs this Agreement." Plaintiff counters that the arbitration agreement is not valid because American General engaged in the unlawful practice of law by not having an attorney present at the signing. Defendant responds that plaintiff's argument goes to the entire contract and, in conformity with the arbitration agreement, must be arbitrated.

The FAA does not require arbitration unless the parties have contractually agreed to arbitrate.[14] The court is persuaded that in the present matter, the parties entered into a valid credit agreement and intended to arbitrate their claims in accordance with the arbitration agreement. In Delaware, a contract exists "if a

---

[10] *Century Indemnity Co. v. Certain Underwriters at Lloyd's*, No. 08-2924, 2009 WL 3297322, at *5 (3d Cir. 2009).
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.* at *7-8.

reasonable person would conclude, based on the objective manifestations of assent and surrounding circumstances, that the parties intended to be bound by their agreement on all essential terms."[15]  In order to determine whether the requisite intent is met, courts must examine the language of the contract.[16]  "The principal question is whether or not the contractual language is ambiguous."[17]

The facts presented suggest that plaintiff and her late husband reviewed the entire credit agreement, including the arbitration agreement, at least once.  Their initials on the bottom of each page confirm as much.  In addition, the final page of the credit agreement reiterates that by signing, the borrower is bound by the "agreement, including the arbitration agreement . . . ."[18]  Directly below, the credit agreement reads, "CAUTION: IT IS IMPORTANT THAT I THOROUGHLY READ THE CONTRACT BEFORE I SIGN IT."  Both plaintiff's and her husband's signatures appear on the same page.  Plaintiff also never suggests that the language of the credit agreement is ambiguous.  Therefore, the necessary intent was established for the creation of a valid contract between plaintiff and her husband and American General.  Having concluded that the parties entered into a contract, the FAA provides that the arbitration agreement is also "valid, irrevocable, and enforceable."[19]

---

[15] *Patel v. Patel*, 2009 WL 427977, at *3 (Del. Super. Ct. 2009) (citing *Leeds v. First Allied Conn. Corp.*, 521 A.2d 1095, 1101 (Del. Ch. 1986)).

[16] *E.I. Du Pont De Nemours and Co. v. Admiral Ins. Co.*, 711 A.2d 45, 56 (Del. Super. Ct. 1995).

[17] *Id.*; *see also Leeds*, 521 A.2d at 1097 (courts must examine "the ordinary meaning of the language employed in writings reflecting agreements").

[18] The clause is boxed, in all capital letters, and mentions arbitration over three times.

[19] 9 U.S.C. § 2 (2009).

4

Furthermore, whether or not the contract is invalid because an attorney was not present is an issue for arbitration.  The United States Supreme Court stated that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."[20]  Plaintiff concedes that her argument goes to the entire credit agreement when she states, "[t]he only just   remedy . . . is the invalidation of the arbitration agreement and the *illegally-obtained mortgage*."[21]

Plaintiff further contends that the arbitration agreement is unconscionable as it constricts her right, but not American General's right to sue, is lengthy and in small font, and has been rendered unconscionable by other courts.  Defendant maintains that the arbitration agreement applies equally to both parties, that plaintiff's signature manifests intent, and that the present arbitration agreement was upheld in other jurisdictions.

Under Delaware law, a contract is rendered unconscionable if one of the parties lacks meaningful choice and the contract terms unreasonably favor one party over the other.[22]  Unequal bargaining power, without more, is insufficient to hold an arbitration agreement unconscionable.[23]  The court recently addressed this same issue in *Gonzalez*.[24]  The plaintiff in that matter alleged that the arbitration agreements were unenforceable because they were presented to him quickly and had to be signed "in order to secure a spot on the defendant's payroll."[25]  The court determined that the plaintiff failed to "prove an absence of [a] meaningful choice and unreasonably favorable

---

[20] *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006).
[21] Emphasis added.
[22] *Gonzalez*, 2009 WL 2340678, at *2.
[23] *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991).
[24] *Gonzalez*, 2009 WL 2340678, at *1.
[25] *Id.* at *2.

terms in the arbitration agreements."[26]  Similarly, plaintiff in the present matter has failed to make a sufficient showing that the arbitration agreement *unreasonably* favors American General.  The arbitration agreement clearly applies to both parties as denoted by the use of the language "Lender and I" throughout.  Furthermore, the arbitration agreement specifically includes "all claims and disputes arising out of . . . the validity and enforceability of this Arbitration Agreement and the Agreement."  As the Supreme Court concluded in *First Options of Chicago, Inc. v. Kaplan*, a party who has agreed to arbitrate "has relinquished much" of his or her right to have a court decide the merits of its dispute.[27]  Therefore, plaintiff's concerns must be addressed in arbitration.

Finally, defendant asserts that plaintiff's complaint comes within the scope of the arbitration agreement.  Since plaintiff has failed to offer any evidence to counter the presumption of arbitrability, the court concludes that the matter is subject to the FAA and refers the matter to arbitration.

**CONCLUSION**

Based upon the foregoing analysis, defendants' motion to compel arbitration is **GRANTED**.

---

[26] *Id.*
[27] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).